# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ALASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DONALD RAY KENDRICKS, JR.,<br><br>Defendant. | Case No. 3:19-cr-00029-SLG-DMS |

## ORDER REGARDING PRESENTENCE RELEASE

Before the Court at Docket 63 is the government's Motion for Revocation of Magistrate Judge's Release Order. Defendant Donald Ray Kendricks, Jr., responded in opposition at Docket 69.

On or around April 1, 2019, Mr. Kendricks was arrested on two drug charges: Drug Conspiracy (methamphetamine) and Distribution of Controlled Substances (methamphetamine).[1] It appears he has remained in custody since his arrest. On August 15, 2019, Mr. Kendricks pleaded guilty to both charges.[2] In June 2020, Mr. Kendricks was in custody at Goose Creek Correctional Facility[3] but had not yet

---

[1] Docket 4 at 1 (under seal); Docket 2.

[2] Docket 27.

[3] Based on an agreement with the government, Mr. Kendricks is in the primary custody of the State of Alaska serving an approximate two-year state sentence for a parole violation. Docket 34; Docket 39 at 2–3. When his state sentence is completed, Mr. Kendricks will revert to primary federal custody. Accordingly, Mr. Kendricks will not be actually released from Goose Creek unless he is released from both his federal detainer and the State of Alaska Department of Corrections (Alaska DOC) elects to release him onto electronic monitoring. Mr. Kendricks'

been sentenced in the instant case, and he moved for a detention review hearing.[4] The government opposed Mr. Kendricks' motion.[5] The motion was referred to the Honorable Magistrate Judge Deborah M. Smith, who held hearings on the motion on June 10 and 19, 2020.[6] The parties submitted supplemental briefing to the magistrate judge after the second hearing.[7] The U.S. Probation Office filed a sealed memorandum regarding Mr. Kendricks' proposed release plan in which it recommended that Mr. Kendricks remain in custody pending sentencing.[8] On July 16, 2020, Judge Smith issued an order granting Mr. Kendricks' release "with conditions to be established."[9]

The matter is now before this Court pursuant to 18 U.S.C. § 3145. That statute provides that if "a person is ordered released by a magistrate judge . . . the Government may file, with the court having original jurisdiction over the offense, a

---

status as an inmate of separate sovereigns has no bearing on this Court's decision.

[4] Docket 39.

[5] Docket 46.

[6] Dockets 50, 52.

[7] Dockets 54, 56 (defense supplements); Docket 55 (government supplement).

[8] Docket 44 at 2.

[9] Docket 61 at 19.

Case No. 3:19-cr-00029-SLG-DMS, *United States v. Kendricks*
Order Re Presentence Release
Page 2 of 16
Case 3:19-cr-00029-SLG-DMS   Document 70   Filed 08/05/20   Page 2 of 16

motion for revocation of the order[.]"[10] This Court's review of the release order is *de novo*.[11]

**I.     Applicable law**

The instant motion is governed by two interrelated provisions of the Bail Reform Act: 18 U.S.C. § 3143 and 18 U.S.C. § 3145.

As relevant here, § 3143(a)(2) requires a court to detain a defendant who been found guilty of a drug offense with a maximum sentence of at least ten years and who is awaiting imposition of a sentence, unless the court finds either (1) the defendant is likely to prevail on a motion for acquittal or new trial, or (2) the government does not seek a custodial sentence, and (3) also finds, by clear and convincing evidence, that the defendant is not likely to flee or pose a danger to others.[12] The parties appear to agree that Mr. Kendricks is subject to detention pursuant to § 3143(a)(2) based on the drug crimes to which he has pleaded guilty.[13]

However, § 3145 offers defendants an alternate route to release. Section 3145(c) provides that, as relevant here, a "person subject to detention pursuant to section 3143(a)(2) . . . and who meets the conditions of release set forth in section

---

[10] 18 U.S.C. § 3145(a)(1).

[11] *United States v. Koenig*, 912 F.2d 1190, 1191–92 (9th Cir. 1990).

[12] 18 U.S.C. § 3143(a)(2) (referencing offenses listed in § 3142(f)(1)).

[13] Docket 63 at 6, 10; Docket 69 at 3–4.

Case No. 3:19-cr-00029-SLG-DMS, *United States v. Kendricks*
Order Re Presentence Release
Page 3 of 16
Case 3:19-cr-00029-SLG-DMS   Document 70   Filed 08/05/20   Page 3 of 16

3143(a)(1) . . . may be ordered released, under appropriate conditions, by the judicial officer, if it is clearly shown that there are exceptional reasons why such person's detention would not be appropriate."[14]

In *United States v. Garcia*, the Ninth Circuit addressed the meaning of "exceptional reasons" for two defendants seeking release on bail pending appeal.[15] In *Garcia*, two former prison officers were convicted of a conspiracy that qualified as a violent offense, and they then moved the district court to release

---

[14] Although § 3145(c) at first glance appears to apply only to defendants who are appealing a detention order, the Ninth Circuit has determined that "Section 3145(c) . . . applies to defendants seeking release pending sentencing as well as to those seeking release pending appeal. The legal principles [discussed in the opinion] are equally applicable in both circumstances." *United States v. Garcia*, 340 F.3d 1013, 1015 n.2 (9th Cir. 2003). The Ninth Circuit has also determined that "[a]lthough the 'exceptional reasons' provision appears in a subsection that otherwise concerns actions taken by appellate courts . . . the district court has authority to determine whether there are exceptional reasons." *Id.* at 1014 n.1.

Courts are in disagreement as to whether magistrate judges have the authority to issue an order for detention or release when the defendant is awaiting sentencing or whether magistrate judges are limited to issuing a recommendation to a district judge. *Compare United States v. Blechman*, Case No. 10-40095-01/02-SAC, 2011 WL 2473735, at *12 (D. Kan. June 22, 2011) (concluding that a magistrate judge is not a "judicial officer" under § 3141(b) and had no authority to issue an order of release or detention) *with Gov't of Virgin Islands v. Clark*, 763 F. Supp. 1321, 1322 (D. V.I. 1991) ("Under 18 U.S.C. § 3141(b), a judicial officer of a court of original jurisdiction over an offense, *e.g.*, a United States magistrate judge, has the power to 'order that, pending imposition or execution of a sentence a person be released or detained under this chapter.'") (ellipsis omitted), *aff'd*, 989 F.2d 487 (3d. Cir. 1993) *and United States v. Lira*, Case No. DR-04-CR-722, 2006 WL 8453016, at *1 (W.D. Tex. Feb. 10, 2006) (finding that the magistrate judge was a judicial officer of the court and thus authorized to order release or detention pending sentencing); *see also United States v. Loaiza*, Case No. 18-cr-134-01-PB, 2018 WL 6421657, at *1, n.1 (D. N.H. Nov. 20, 2018) (discussing conflict and concluding that "[i]n an abundance of caution, the [magistrate] court will issue a Report and Recommendation in this matter"). This Court assumes without deciding that the magistrate judge had the authority to issue a release order in this case.

[15] 340 F.3d 1013 (9th Cir. 2003).

Case No. 3:19-cr-00029-SLG-DMS, *United States v. Kendricks*
Order Re Presentence Release
Page 4 of 16
Case 3:19-cr-00029-SLG-DMS   Document 70   Filed 08/05/20   Page 4 of 16

them on bail pending their Ninth Circuit appeal.[16] One of the defendants, Garcia, had been diagnosed with lymphoma and was undergoing chemotherapy while his bail motion was before the district court.[17] The district court had denied Garcia's request for release, reasoning that the record was "inconclusive as to Garcia's prognosis and as to the likelihood of his incapacity due to his illness or the treatment, and also noted that he could receive appropriate medical care in prison."[18] The Ninth Circuit remanded to the district court to allow Garcia to present additional evidence with regard to his illness.[19] The Circuit explained:

> The district court might also consider circumstances that would render the hardships of prison unusually harsh for a particular defendant. Chief among such circumstances is a sufficiently serious illness or injury. A severely ill or injured defendant might have exceptional reasons even if the requisite medical treatment is available in prison. District judges may consider such factors as the desirability of maintaining an uninterrupted course of treatment while a defendant remains in the care of a particular physician who is providing individual medical supervision to the patient. Although a defendant may ultimately be forced to serve a prison sentence regardless of his health, it may be unreasonable to force him to begin his sentence prior to the resolution of his appeal. Nor do we foreclose the possibility of finding exceptional circumstances in a case in which incarceration would impose exceptional risks on a defendant involving his physical or mental well-being—risks that might arise as a result of the nature of his crime or even as a result of his possessing certain physical, psychological, or other characteristics.[20]

---

[16] *Id.* at 1014.

[17] *Id.* at 1016.

[18] *Id.*

[19] *Id.* at 1022.

[20] *Id.* at 1019–20.

Case No. 3:19-cr-00029-SLG-DMS, *United States v. Kendricks*
Order Re Presentence Release
Page 5 of 16
Case 3:19-cr-00029-SLG-DMS   Document 70   Filed 08/05/20   Page 5 of 16

Despite its remand, the Ninth Circuit emphasized that "[h]ardships that commonly result from imprisonment do not meet the [exceptional circumstances] standard. The general rule must remain that conviction for a covered offense entails immediate incarceration. Only in truly unusual circumstances will a defendant whose offense is subject to the statutory provision be allowed to remain on bail [.]"[21]

In summary, to release Mr. Kendricks pursuant to § 3145(c), the Court must (1) find that exceptional reasons for release have been clearly shown, and (2) find by clear and convincing evidence that Mr. Kendricks is not likely to flee or pose a danger to the safety of any other person or the community.[22]

---

[21] *Garcia*, 340 F.3d at 1022. The *Garcia* Court also noted that "the absence of any possible future dangerousness or flight is most likely to be present in cases in which other mitigating factors, such as a sufficiently serious illness or injury, also exist." 340 F.3d at 1021.

[22] The Court rejects the government's position that § 3145(c) also requires courts to find that "there is a substantial likelihood that a motion for acquittal or new trial will be granted, or an attorney for the United States has recommended that no sentence of imprisonment be imposed on the person." Docket 63 at 10–11. That standard is contained in § 3143(a)(2), which is not the applicable statutory provision referenced in § 3145(c). The conditions of release set forth in § 3143(a)(1) only require a finding by the judicial officer "by clear and convincing evidence that the person is not likely to flee or pose a danger to the safety of any other person or the community."

The Court acknowledges that Circuit Judge Rymer has stated, in a concurring opinion in a case involving a request for bail pending appeal, that a defendant must show "that he is not likely to flee or pose a danger to the safely of anyone else or the community, and the appeal raises a substantial question . . . *and* if it is clearly shown there are exceptional reasons why detention would not be appropriate." *United States v. Koon*, 6 F.3d 561, 562–63 (Rymer, J., concurring) (citing 18 U.S.C. §§ 3143(b)(1), 3143(b)(2), 3145(c)). However, the Court does not interpret § 3145(c) to require Mr. Kendricks to make any showing related to the merits of an appeal.

Case No. 3:19-cr-00029-SLG-DMS, *United States v. Kendricks*
Order Re Presentence Release
Page 6 of 16
Case 3:19-cr-00029-SLG-DMS   Document 70   Filed 08/05/20   Page 6 of 16

## II. Mr. Kendricks has not clearly shown exceptional reasons for release.

Mr. Kendricks maintains that his chronic health conditions during the COVID-19 pandemic constitute exceptional reasons for his release from incarceration pending sentencing.

### A. The medical evidence supports a finding that Mr. Kendricks is at increased risk for COVID-19 and risks more severe symptomology if he contracts it.

Mr. Kendricks is 54 years old. He identifies his primary health condition as rheumatoid arthritis (RA), for which he takes Humira, an immunosuppressant/TNF-inhibitor medication.[23] Mr. Kendricks also has hypertension, for which he is to take daily medication; a history of hepatitis C, although recent liver tests were normal; and he may be pre-diabetic, with recent lab working showing an elevated glucose level.[24]

Mr. Kendricks relies on three letters from his rheumatologist, Dr. Ryan Ragle, who has treated Mr. Kendricks for RA since 2016. In a letter dated May 28, 2020, Dr. Ragle identified Mr. Kendricks' current medications as weekly Humira injections and daily hydroxychloroquine.[25] Dr. Ragle opined that "[d]ue to immunosuppressive effects of Humira patient would be at increased risk for both

---

[23] Docket 39 at 4.

[24] Docket 39 at 5; Docket 45-6 at 1; Docket 53-1 at 2.

[25] Docket 51-1 at 2 (under seal).

Case No. 3:19-cr-00029-SLG-DMS, *United States v. Kendricks*
Order Re Presentence Release
Page 7 of 16
Case 3:19-cr-00029-SLG-DMS   Document 70   Filed 08/05/20   Page 7 of 16

contracting COVID-19 infection and potentially a more severe clinical course should he become infected."[26]

The government responded to this letter by filing a medical study focused on the COVID-19 hospitalization rates of a registry of 600 patients from 40 countries with rheumatic diseases, including RA.[27] The study noted that the "rate of hospitalization was higher [for these patients] than in cohorts of general patients with COVID-19," but reasoned that "this likely reflects the mechanism by which we collected the case information and should not be interpreted as the true rate of hospitalization among patients with rheumatic disease infected with SARS-CoV-2."[28] The study found that 46% of patients with RA that contracted COVID-19 were hospitalized; the percentage increased to 62% if the patient also had hypertension, but decreased to 29% if the patient was on a TNF-inhibitor such as Humira.[29] The study concluded that "the majority of patients with rheumatic diseases captured in [the study's] registry recover from COVID-19."[30]

---

[26] Docket 51-1 at 2 (under seal).

[27] Docket 55-3. The study was published as Gianfrancesco, M., *et al.*, *Characteristics associated with hospitalisation for COVID-19 in people with rheumatic disease: data from the COVID-19 Global Rheumatology Alliance physician-reported registry*, 79 Annals of the Rheumatic Diseases 859 (July 2020).

[28] Docket 55-3 at 5.

[29] Docket 55-3 at 5 tbl. 3.

[30] Docket 55-3 at 6.

Case No. 3:19-cr-00029-SLG-DMS, *United States v. Kendricks*
Order Re Presentence Release
Page 8 of 16
Case 3:19-cr-00029-SLG-DMS   Document 70   Filed 08/05/20   Page 8 of 16

Dr. Ragle's third letter, dated June 21, 2020, responded to the study. He observed that the study "continues to support a higher risk of infection in patients with rheumatoid arthritis and on immunosuppressive therapies and also suggests the likelihood of a more severe clinical course."[31] Dr. Ragle acknowledged that "[t]here is evidence to suggest that patients on TNF inhibitors for treatment of rheumatic disease who become infected with COVID-19 may have less severe complications and decreased need for hospitalization" when compared to RA patients who are on different types of treatment.[32] Dr. Ragle continued to opine that "Mr. Kendricks has an increased risk of infection and an increased risk of complications from COVID-19 based on both his diagnosis of rheumatoid arthritis and his treatment regimen."[33]

The Court has credited and accepted Dr. Ragle's medical opinions and finds that due to Mr. Kendricks' RA and hypertension, as well as his treatment regimen, he is at greater risk than the general population of contracting COVID-19 and

---

[31] Docket 53-1 at 2 (under seal)

[32] Docket 53-1 at 2 (under seal).

[33] Docket 53-1 at 2.

A study cited by Mr. Kendricks states that "the growing knowledge about the pathogenesis of SARS-CoV-2 infection is leading to the introduction of drugs commonly used for the treatment of rheumatoid arthritis (RA) even for the management of more complex cases of COVID-19" and specifically references both hydroxychloroquine and TNF-inhibitors. Favalli, E.G., *et al.*, *Covid-19 Infection and Rheumatoid Arthritis: Faraway, So Close!*, 19 Autoimmunity Reviews (2020) (available at www.sciencedirect.com/science/article/pii/S1568997220300781) (last accessed Aug. 5, 2020); *see* Docket 39 at 4 (citing article).

Case No. 3:19-cr-00029-SLG-DMS, *United States v. Kendricks*
Order Re Presentence Release
Page 9 of 16
Case 3:19-cr-00029-SLG-DMS   Document 70   Filed 08/05/20   Page 9 of 16

having a more severe course of infection if he contracts COVID-19 than does the general population.[34] However, the extent to which he is at greater risk is unknown. Mr. Kendricks has not demonstrated that he faces "exceptional risks" from COVID-19 if he remains incarcerated.[35]

### B. Mr. Kendricks is receiving appropriate medical care at Goose Creek Correctional Facility.

In contending that there are exceptional reasons for his release, Mr. Kendricks maintains that Goose Creek Correctional Facility "is unable to provide Mr. Kendricks adequate medical care at this time," particularly care for his RA.[36]

The record does not support Mr. Kendricks' claims of inadequate medical care at Goose Creek. Mr. Kendricks has not clearly shown that his RA and hypertension are not being adequately controlled while he is in custody, or that his condition is so severe that Goose Creek cannot provide appropriate medical care. There is conflicting evidence as to whether Mr. Kendricks has missed his weekly Humira injections due to his own inaction or whether Goose Creek has failed to schedule him for his weekly injections.[37] However, his medical records reflect that

---

[34] The Court is not persuaded by Dr. Ragle's comparison of the hospitalization rate for COVID-19 patients in the worldwide study, which analyzed data collected over 30 days in March/April 2020, to the current hospitalization rate of patients in Alaska. *See* Docket 53-1 at 2. The study itself cautions that its hospitalization rate is likely overstated due to its data collection method and "should not be interpreted as the true rate of hospitalization among patients with rheumatic diseases infected with SARS CoV-2." Docket 55-3 at 5.

[35] *Garcia,* 340 F. 3d at 1020.

[36] Docket 54 at 7; Docket 39 at 4–5.

[37] *See* Docket 45-2 at 2, 3, 4 (under seal) (January, February, and March 2020 notes from Mr.

Case No. 3:19-cr-00029-SLG-DMS, *United States v. Kendricks*
Order Re Presentence Release
Page 10 of 16
Case 3:19-cr-00029-SLG-DMS   Document 70   Filed 08/05/20   Page 10 of 16

he does not consistently take his other medications, which supports a conclusion that Mr. Kendricks is primarily responsible for any lapse in Humira injections.[38]

Mr. Kendricks also has not clearly shown that he "suffers from a disease that the Alaska DOC does not have the ability to treat."[39] The medical records show that Goose Creek receives and responds to prescriptions from Dr. Ragle.[40] There is some evidence that Mr. Kendricks could benefit from more frequent appointments with his rheumatologist than he currently receives, but he has not alleged that the time between appointments with Dr. Ragle has caused his RA to worsen or decreased the effectiveness of his current course of treatment.[41] Nor has Mr. Kendricks shown that he has sought an appointment with Dr. Ragle at any

---

Kendricks to Goose Creek medical staff indicating that he needed to be scheduled for a Humira injection); Docket 45-4 at 3 (under seal) (February 2020 medical record stating that Mr. Kendricks "is not always coming to weekly appointment for Humira injection . . . noncompliance may lead to discontinuation of medication."); Docket 47-1 at 22, 23 (under seal) (February and March 2020 medical record stating that Mr. Kendricks "understands to return in one week for scheduled weekly injection").

[38] *See* Docket 47-1 at 23 (under seal) (February 2020 medical record indicating that Mr. Kendricks told medical staff "he has not taken his daily meds" for hypertension); Docket 47-1 at 41 (under seal) (December 2019 medical record indicating that Mr. Kendricks on average "is four to five days behind on his medications," that Mr. Kendricks acknowledged he did not always take his medications, and that medical staff explained he needed to improve his compliance).

[39] Docket 39 at 6.

[40] *See, e.g.*, Docket 47-1 at 12 (under seal) (medical record showing change in RA medication "per Dr Ragel" [sic]); Docket 471 at 47 (medical records showing medical staff contacted "provider" when no medication was available).

[41] It appears that Mr. Kendricks' last appointment with Dr. Ragle was in November, 2019, eight months ago. Docket 53- at 2 (under seal). Dr. Ragle believes Mr. Kendricks should be seen in his clinic "every 3 to 6 months, depending on his disease activity." Docket 51-1 at 1 (under seal).

Case No. 3:19-cr-00029-SLG-DMS, *United States v. Kendricks*
Order Re Presentence Release
Page 11 of 16
Case 3:19-cr-00029-SLG-DMS   Document 70   Filed 08/05/20   Page 11 of 16

time since his last visit in November 2019 and the Alaska DOC refused to permit it. To the contrary, a deputy marshal told the magistrate judge that the U.S. Marshals would facilitate an appointment at the request of either the Alaska DOC or Mr. Kendricks, although Mr. Kendricks would likely be quarantined at Goose Creek for a period of time following any such medical appointment.[42] Mr. Kendricks has not demonstrated that his RA is not being appropriately managed by Goose Creek.

Although Mr. Kendricks notes that he has hypertension, a history of hepatitis-C, and is pre-diabetic, he does not present any argument related to those conditions other than to maintain that the "combination of underlying health conditions makes him particularly susceptible to serious complications from COVID-19."[43] Mr. Kendricks has only made conclusory assertions about his co-occurring conditions. He has not clearly shown other exceptional health conditions or risks that Goose Creek is unable or unwilling to appropriately address.

In sum, while Mr. Kendricks is at greater risk than average of contracting COVID-19 and of having a more severe infection if he contracts COVID-19 than does the general population, he has not clearly shown that his RA and other medical conditions are "sufficiently serious illness[es]" or that his case presents

---

[42] Docket 67 at 6; Docket 68 at 11–12. Another alternative could be a teleconference with the doctor.

[43] Docket 39 at 5, 7.

Case No. 3:19-cr-00029-SLG-DMS, *United States v. Kendricks*
Order Re Presentence Release
Page 12 of 16
Case 3:19-cr-00029-SLG-DMS   Document 70   Filed 08/05/20   Page 12 of 16

such "truly unusual circumstances" that continued incarceration presents "exceptional risks" to his health.[44]

### C. Mr. Kendricks has not clearly demonstrated that he would be at reduced risk from COVID-19 if released.

Implicit in Mr. Kendricks' motion is the assertion that he will be safer from COVID-19 if he is released from jail at this time. But the record is devoid of evidence regarding the efforts Mr. Kendricks intends to take to protect his health if

---

[44] *Garcia*, 340 F.3d at 1019, 1020, 1022. *See United States v. Pereira*, Case No. 19-10446-RGS, 2020 WL 2324054, at *1 (D. Mass. May 10, 2020) (denying pretrial release to a defendant with RA and ulcerative colitis, reasoning that although the defendant "is more vulnerable than many others might be should he contract the COVID-19 virus [the court does] not, however, believe that his medical condition is so acute as to render the risk unmanageable"); *United States v. Haywood*, Case No. 2:16-cr-00269-JAD-PAL-2, 2020 WL 3621309, at *2 (D. Nev. July 2, 2020) (denying compassionate release for a defendant with RA, reasoning that "while the immunosuppressant he takes may increase his risk, that risk is mitigated by the BOP's active management of his care and routine COVID-19 testing."); *United States v. Guzman*, Case No. 3:16-CR-449-L-1, 2020 WL 3129692, at *2 (N.D. Tex. June 11, 2020) ("The court does not downplay Defendant's Rheumatoid arthritis or discount that being confined in a prison makes it more difficult for him or any prisoner to follow official precautions for social distancing and handwashing while in custody. Defendant has failed, however, to provide sufficient grounds for compassionate release. First, he fails to establish that his condition is sufficiently severe and that it diminishes his ability to provide self-care, especially considering his relatively young age (37). Even considering the July 2019 Rheumatology Clinic report, Defendant does not present any other evidence or medical records documenting his current symptoms and own unique circumstances sufficient to establish exceptional and compelling circumstances. At best, he has offered only conclusory assertions about his Rheumatoid arthritis and immunocompromised condition.").

*United States v. McDuffie*, Case No. 19-CR-212(VEC), 2020 WL 1659879 (S.D.N.Y. Apr. 3, 2020), cited by the magistrate judge, is only one of two cases this Court located in which a defendant with RA was released from custody due to COVID-19 concerns. Notably, *Duffie* was decided early in the pandemic, on April 2, 2020, in the New York City area, during the height of the pandemic in that region. The other case, *United States v. Hope*, Case No. CR 213-016-1, 2020 WL 4207107 (S.D. Ga. July 22, 2020), involved a defendant with "advanced deforming" RA, a secondary immune system disorder, and a range of other co-occurring conditions, conditions which the government conceded and the Court found constituted extraordinary and compelling reasons for compassionate release. *Id.* at *4.

Case No. 3:19-cr-00029-SLG-DMS, *United States v. Kendricks*
Order Re Presentence Release
Page 13 of 16
Case 3:19-cr-00029-SLG-DMS   Document 70   Filed 08/05/20   Page 13 of 16

he were to be released.[45]  In many areas of the country, the rate of COVID-19 infection is considerably higher within jails and prisons than the rate amongst the general public.  However, and perhaps surprisingly, that is not presently the case in Alaska.  According to the Marshall Project, there have been 17 COVID-19 cases reported among pretrial detainees and sentenced prisoners in Alaska, which is a rate that is currently 12 percent *lower* than the per capita rate in Alaska overall.[46]

The Court has carefully considered Mr. Kendricks' housing conditions, the heightened risk of COVID-19 to many incarcerated individuals, and Mr. Kendricks' health conditions.  Mr. Kendricks has not demonstrated that there are "any truly unusual factors or combination of factors" that are clearly present in this case that would constitute exceptional reasons for release pending sentencing.

Because the Court has determined that no exceptional reasons exist to release Mr. Kendricks, it need not determine whether clear and convincing evidence shows that he is not a flight risk and does not pose a danger to the community.

---

[45] *See United States v. Pereira*, Case No. 19-10446-RGS, 2020 WL 2324054, at *1 (D. Mass. May 10, 2020) (expressing concern "that release would take Pereira out of a setting in which medical services are available and place him in one in which they likely are not").

[46] The Marshall Project, *A State-by-State Look at Coronavirus in Prisons* (available at www.themarshallproject.org/2020/05/01/a-state-by-state-look-at-coronavirus-in-prisons) (last accessed August 5, 2020).  Of concern, the Court notes that 14 of the 17 cases have been reported in the past week.

Case No. 3:19-cr-00029-SLG-DMS, *United States v. Kendricks*
Order Re Presentence Release
Page 14 of 16
Case 3:19-cr-00029-SLG-DMS   Document 70   Filed 08/05/20   Page 14 of 16

### III. 18 U.S.C. § 3142 does not apply to Mr. Kendricks.

The magistrate judge determined that 18 U.S.C. § 3142(i) was also applicable to Mr. Kendricks' release motion.[47] Section 3142(i) pertains to the determination of release or detention of a defendant "pending trial" and permits the temporary release of pretrial defendants if the court finds that release is "necessary for the preparation of the person's defense or for another compelling reason." Here, the magistrate judge found that "Section 3142(i) provides an alternative statutory ground" and concluded that there were "compelling reasons to temporarily release [Mr. Kendricks] pursuant to section 3142(i) pending his sentencing."[48]

Because Mr. Kendricks is not pending trial but is pending sentencing, the Court finds that § 3142 is not a viable basis for granting his release.[49] Even if

---

[47] Docket 61 at 18.

[48] Docket 61 at 18.

[49] Several district courts in this Circuit have addressed § 3142(i)'s inapplicability to defendants who have pleaded guilty and are awaiting sentencing. *See United States v. Ruelas*, Case No. CR-14-00865-005-PHX-DJH, 2020 WL 2989019, at *1 (D. Ariz. June 3, 2020) (declining to analyze case under § 3142(i) because defendant conceded it did not apply as he was awaiting sentencing); *United States v. Lee*, Case No. 2:17-cr-0030-KJM, 2020 WL 2084812, at *3 (E.D. Cal. Apr. 30, 2020) (noting, but not deciding, that "Defendant is not awaiting trial, so, on its face, § 3142 does not apply to defendant at this stage"); *United States v. Milano*, Case No. 1:19-CR-00171-BLW, 2020 WL 1976640, at *2, n.3 (D. Id. Apr. 24, 2020) ("Section 3142(i) applies to release or detention pending trial and, therefore, does not apply to Mr. Milano's motion as he has entered a guilty plea and is detained awaiting sentencing."). *But see United States v. Kennedy*, Case No. 18-20315, 2020 WL 1493481, at *3 (E.D. Mich. Mar. 27, 2020) (holding that § 3142(i) applies to defendants awaiting sentencing), *reconsideration denied*, No. 18-20315, 2020 WL 1547878 (E.D. Mich. Apr. 1, 2020).

§ 3142 were applicable to Mr. Kendricks, under its more generous standard the Court would still find that his temporary release is not necessary for the preparation of his defense and that his current medical condition and the COVID-19 pandemic are not sufficiently "compelling reasons" to justify temporary release.  It is irrelevant that "[t]he government does not challenge the appropriateness of release under this section,"[50] because the Court's *de novo* review requires it to independently determine the applicable law.

## CONCLUSION

Having reviewed the underlying motion for a detention review hearing *de novo*, this Court disagrees with the magistrate judge's analysis and concludes that Mr. Kendricks has not clearly shown that there are exceptional reasons why his continued detention is not appropriate and also concludes that 18 U.S.C. § 3142 does not apply to Mr. Kendricks.  Accordingly, IT IS ORDERED that the motion at Docket 63 is GRANTED, and the magistrate judge's order at Docket 61 is REVOKED.

DATED this 5th day of August, 2020, at Anchorage, Alaska.

*/s/ Sharon L. Gleason*
UNITED STATES DISTRICT JUDGE

---

[50] Docket 69 at 5.

Case No. 3:19-cr-00029-SLG-DMS, *United States v. Kendricks*
Order Re Presentence Release
Page 16 of 16
Case 3:19-cr-00029-SLG-DMS   Document 70   Filed 08/05/20   Page 16 of 16